IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANA L. STILLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-CV-216-PJC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff, Dana L. Stills, seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner" and "SSA") denying Stills' applications for disability insurance benefits and for supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* For the reasons discussed below, the Commissioner's decision is **AFFIRMED**.

**Procedural History**

Stills filed her applications for disability insurance benefits and supplemental security income benefits with a protective filing date of September 15, 2006. [R. 10, R. 105]. She alleged onset of disability as of May 3, 2005. [R.91, 94]. The applications were denied initially and on reconsideration. [R. 65-71]. An administrative hearing was held before Administrative Law Judge Lantz McClain ("ALJ McClain") on September 19, 2008. [R. 17-42]. The Appeals Council affirmed the decision on November 19, 2009. [R. 1-4]. Stills appealed to this court, which affirmed ALJ McClain's decision on April 13, 2011. [Case No. 10-CV-37-TLW, Dkt. #22]. Stills appealed to the Tenth Circuit Court of Appeals, which reversed the district court's

decision on April 16, 2012. [R. 522-530]. A second ALJ hearing was held before ALJ McClain on February 1, 2013, and the claim was denied on April 17, 2013. [R. 537-588]. The Appeals Council reversed and remanded the claim on January 14, 2014. [R. 599-565]. A third ALJ hearing was held on May 5, 2014, before ALJ Gene M. Kelly ("ALJ"), who issued an unfavorable decision on May 24, 2014. [R. 402-426]. The Appeals Council affirmed the denial on February 18, 2015. [R. 388-391]. Stills timely sought review by this court.

## Claimant's Background

Stills was born February 20, 1963, and was 51 years old at the time of the ALJ's May 27, 2014, decision. [R. 469]. She has a twelfth grade education and two years of college. [R. 470-471]. Stills has previously been employed as a lead cashier (semi-skilled, SVP 4, light); customer service representative (semi-skilled, SVP 4, light); payroll clerk (semi-skilled, SVP 4, sedentary); and packer (unskilled, SVP 2, medium). [R. 499]. She alleges a disability onset date of May 30, 2005. [R. 91, 94].

At a hearing on May 5, 2014, Stills testified that a collapsed vertebrae at C3, a torn ligament in her right ankle, shortness of breath, pain in her right wrist, migraine headaches, fibromyalgia and back pain prevent her from being able to work. [R. 476-488]. She can bend over and touch her knees but it's "kind of hard" to touch her toes; she can squat, but it is difficult; her doctors have instructed her to lift and/or carry no more than five pounds; she can sit about twenty minutes before she needs to stand up, and can stand for about fifteen minutes before she has to sit down. [R. 489-490]. She can walk one block. [R. 497]. Her medication does not make her drowsy. *Id.* Her pain increases with rainy weather or a full moon. [R. 490]. She gets depressed about two times a month because of fibromyalgia and her neck. [R. 491]. She takes medication for depression, and it helps. [R. 490-491]. She uses heat, ice and

sometimes a whirlpool bath for her pain. [R. 492]. Stills makes her bed and prepares simple meals like a bowl of soup in the microwave; she does not do housework or shop. [R. 493]. She watches television and reads; family and friends come to her house; she does not belong to any clubs, organizations or churches, has no social activities or hobbies, and does not garden or do yard work. [R. 494].

Medical records range from June 2004 to April 2014, and include records from Stills' treating physicians, medical testing and state consultative examinations. *See* Court Transcript Index, Exs. 20F-29F.

Plaintiff's most recent prescription medications are Gabapentin, Lorazepam, cyclobenzaprine and hydrocodone for her neck; Lyrica for fibromyalgia; Lovastatin for cholesterol; benzonatate for coughing and allergies; dicyclomine for irritable bowel syndrome; Estradiol and Premarin for hormone replacement therapy; and clindamycin and chlorhexidine for teeth and gums. [R. 667 (Ex. 16E)].

Non-examining state agency expert Judy Marks-Snelling, D.O., M.P.H, completed a Residual Functional Capacity Assessment of claimant on January 17, 2006. [R. 209-216 (Ex. 1F)]. She found that Stills could occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds; stand and/or walk for about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; no limitations on push and/or pull; and no postural, manipulative, visual, communicative or environmental limitations. [R. 210-213]. Dr. Marks-Snelling's assessment was affirmed on review by state agency expert Luther Woodcock, M.D. [R. 318 (Ex. 14F)].

Stills' treating neurologist/neuro-psychiatrist, Ralph Richter, M.D., submitted Physician Medical Source Statements dated March 16, 2009, January 31, 2013, and April 11, 2014. [R.

382-387 (Ex. 19F); R. 798-800 (Ex. 22F); and R. 878-880 (Ex. 29F)]. In all three Medical Source Statements, Dr. Richter opined that in an eight-hour day, Stills could sit for two hours, stand for one hour and walk for one hour; lift/carry ten pounds occasionally and five pounds frequently; she was limited in the use of her right foot for repetitive movements and in her use of her right hand for grasping and fingering; and she could occasionally bend, squat and crawl, but could not climb and could not reach above shoulder level. [R. 382-384, R. 798-799, R. 878-879]. He stated that the MRIs showed a collapsed C3 vertebral body with retropulsion and degenerative changes to the lumbar spine. [R. 384, 799, 879]. He opined that her allegations of pain were supported by a clinical exam showing evidence of thoracic outlet syndrome; a prior right first cervical rib resection; and documented evidence for fibromyalgia on a tender point exam. [R. 385, 800, 880].

Beau C. Jennings, D.O., performed a consultative physical examination of Stills and completed a medical source statement on October 10, 2012. [R. 707-744 (Ex. 20F)]. Dr. Jennings found she could lift and/or carry up to fifty pounds frequently and up to one hundred pounds occasionally; sit, stand or walk for a total of eight hours in an eight-hour work day; and sit for eight hours continuously in an eight-hour workday, and stand and/or walk for five hours continuously in an eight-hour workday. [R. 714-715]. He found no limitations in her ability to use her hands or feet, and concluded she could perform all postural activities frequently; tolerate exposure to all listed environmental limitations continuously or frequently; and had no limitations on activities of daily living. [R. 716-719].

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

4

impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[1]  *See also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Wall*, 561

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

F.3d at 1052 (quotation and citation omitted). Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

### Decision of the Administrative Law Judge

In his decision, the ALJ found that Stills met insured status requirements through December 31, 2008, and, at Step One, that she had not engaged in any substantial gainful activity since her alleged onset date of May 3, 2005. [R. 408]. He found at Step Two that Stills had severe impairments of fibromyalgia; neck; back; shoulder; ankle; shortness of breath; headaches; depression; and anxiety. *Id.* He found that claimant's medically determinable impairments of the gallbladder, the knee, the hands and the wrists were non-severe, but given the testimony and evidence in the regard regarding the impairment of the hands and wrists, the effect of this impairment required further development. *Id.* However, he determined that medical and other evidence established only a slight abnormality or a combination of slight abnormalities resulting from these impairments that did not significantly limit the claimant's ability to perform basic work activities. [R. 409]. At Step Three, he found that claimant did not have an impairment or combination of impairments that meets or medically equals the severity of any listing. *Id.* He found that Stills had the RFC to perform light work. [R. 418]. He concluded she should avoid cold and damp environments, dusts, fumes and gases; no twisting or nodding the head more than occasionally, occasional reaching overhead, occasional pushing and pulling; additional postural limitations in climbing, bending, stooping, squatting, kneeling, crouching and crawling; additional manipulative limitations with the right leg; and claimant is limited to simple, repetitive, routine work. *Id.*

At Step Four, the ALJ determined that Stills could not perform past relevant work. [R. 418-419]. At Step Five, he determined that considering Stills' age, education, work experience and residual functional capacity, there were jobs that exist in significant numbers in the national economy that claimant can perform, including production inspector, bench assembler, order clerk and clerical mailer. [R. 419-420]. The ALJ found that Stills had not been disabled from May 3, 2005, through the date of his decision. [R. 420].

## Review

Stills' sole argument on appeal is that the ALJ erred in rejecting the three medical source statements of her treating physician, Dr. Richter.

## Analysis

Generally the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a non-examining consultant is given the least weight. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). A treating physician opinion must be given controlling weight if it is supported by "medically acceptable clinical and laboratory diagnostic techniques," and it is not inconsistent with other substantial evidence in the record. *Mays v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014). "When assessing a medical opinion, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c)(2) and give good reasons for the weight he assigns to the opinion." *Vigil v. Colvin*, 805 F.3d 1199, 1202 (10th Cir. 2015) (citations omitted). When an RFC conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8P (S.S.A.), 1996 WL 374184 at *7.

Under 20 C.F.R. §§ 404.1527(c) and 416.927, the opinion of examining physicians is generally given more weight than the opinion of nonexamining physicians, and the opinion of treating physicians is given more weight than the opinion of nontreating physicians. However,

"[i]n appropriate circumstances, opinions for State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources," including when "the State agency medical or p[s]ychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source." SSR 96-6P (S.S.A.), 1996 WL 374180 at *3.

The ALJ accepted Dr. Richter's diagnoses of collapsed C3 vertebral body, degenerative changes to the lumbar spine, fibromyalgia, and a history of thoracic outlet syndrome. [R. 414]. However, he rejected the limitations in Dr. Richter's medical source statements and accorded them little weight. *Id.* He stated that the limitations were inconsistent with the doctor's own records of recent office treatment, as well as other substantial medical and non-medical evidence in the case record. *Id.* For example:

- With respect to recent treatment, the ALJ observed that Dr. Richter's notes from a June 6, 2013, visit reflect that he was working with her to reduce her "chronic use of medications" (Flexeril and cyclobenzaprine were reduced; Lyrica was discontinued), and he counseled her in an effort "to help her from the neuropsychiatric standpoint as well as from the chronic pain standpoint." [R. 414, R. 875 (Ex. 24F)]. After a March 17, 2014, visit, he noted she was successfully using Tylenol and Aleve to relieve headaches, she was using a heating pad on a daily basis and "[s]he has been more active and the severe depressive thoughts are now less." [R. 414, R. 872 (Ex. 24F)].

- The ALJ pointed out that while Dr. Richter restricted Stills from reaching above the shoulder level, bilateral x-rays of her shoulders were negative. [R. 414, R. 837 (Ex. 24)].

- Additionally, the ALJ noted that although x-rays of the cervical spine showed a compression fracture at C3, there were only minimal degenerative osteoarthritic changes. [R. 414, R. 837 (Ex. 24)].

- The ALJ observed that Dr. Richter imposed limitations in grasping and fingering with the right hand, opining that plaintiff "still has features of carpal tunnel syndrome," but "there is no current objective EMG evidence to affirm the presence of hand pain and an earlier EMG study of the right upper extremities performed March 10, 2006, was normal." [R. 414-415, R. 875 (Ex. 28F), R. 264-264 (Ex. 4F)].

- The ALJ also noted that claimant's testimony regarding her hand pain was vague; she said first that she could not, but then said she could pick up poker chips from a table. [R. 415, R. 4880-482].

- Regarding her ankle impairment, the ALJ observed, *inter alia*, that the torn ligament to the right ankle occurred well after the date last insured, in August 2013, but Dr. Richter had noted limitations in the lower right extremity and stated the claimant had evidence of right femoral sensory neuropathy in his first medical source statement on March 16, 2009. [R. 415, R. 382-387 (Ex. 19F), R. 798-800 (Ex. 22F)]. The ALJ also cited treatment records of Stephen R. Huang, M.D., who diagnosed a sprain of the deltoid ligament of the right ankle, but reported that claimant had improved 75% following physical therapy. [R. 415, R. 862, 868 (Ex. 27F)].

The ALJ also considered Dr. Jennings' medical source report, which he characterized as being the "polar opposite" of Dr. Richter's reports. [R. 415]. He pointed out that Dr. Jennings failed to fully complete the backsheet detailing his physical examination findings with regard to the lumbosacral and cervical spine and stated that "[g]iven the incomplete examination findings

9

and the inconsistency with the opinion of Dr. Richter and the opinion of the State agency medical consultants," he accorded little weight to Dr. Jennings' medical opinion. [R. 415-416].

He assigned the State agency medical source opinions "significant weight," and adopted their determination that Stills had the residual functional capacity to perform light work. [R. 416]. He explained that while these experts did not have the opportunity to examine or treat the claimant, the reports "clearly reflect a thorough review of the record and are supportable. In short, the familiarity with the Social Security Administration disability evaluation program and the evidence of record warrants the greatest weight—the opinions given greatest weight are most consistent with the longitudinal review of the evidence of record." [R. 416].

However, the ALJ imposed additional limitations to account for issues identified by Dr. Richter and other treating doctors. [R. 418]. Because of her fibromyalgia, she should avoid dust, fumes and gases. *Id.* Her neck pain limits her to twist and nod the head only occasionally. Shoulder pain limits her to occasional reaching overhead and occasional pushing and pulling. *Id.* Her back impairment limits her with respect to climbing, bending, stooping, squatting, kneeling, crouching and crawling; occasional postural movements are reasonable. *Id.* Due to the combined effect of these impairments, she can only twist the torso occasionally. *Id.* Due to her allegations of headache pain, she is limited to a low noise and low light work environment. *Id.* She has additional manipulative limitations with the right leg. *Id.* Due to her allegations of depression and anxiety, she is limited to simple, repetitive, routine work. *Id.*

When faced with conflicting medical evidence, "[t]he trier of fact has the duty to resolve that conflict." *Richardson v. Perales*, 402 U.S. 389, 399 (1971). Here, the ALJ did just that. In doing so, he fulfilled his obligation to explain the weight he assigned to each opinion. *See Vigil*, 805 F.3d at 1202.

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Stills' argument that the ALJ should have given more weight to Dr.Richter's opinion is essentially a request that this court re-evaluate the evidence, emphasizing the evidence that supports her disability claim and discounting the evidence that does not. The court cannot, however, reweigh the evidence. *Newbold v. Colvin*, 718 F.3d 1257, 1265 (10th Cir. 2013). While Stills' case might be susceptible to conclusions that differ from those made by the ALJ, it is not the court's role to make findings in the first instance. 42 U.S.C. § 405(g) ("The findings of the Commissioner of the Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *Allen v. Barnhart*, 357 F.3d 1140, 1143-45 (10th Cir. 2004) (court acts within confines of its administrative authority).

## Conclusion

For the reasons set forth above, the Commissioner's decision is hereby **AFFIRMED.**

Entered this 30th day of August, 2016.

_____
Paul J. Cleary
United States Magistrate Judge